# INDIANA LOAN & TRUST COMPANY, Appellant, v. LINCOLN TRUST COMPANY; ALFRED A. PAXSON, Interpleader.

### Division One, November 27, 1907.

1. **DEPOSIT: Used for Both Deposit and Security.** A transaction by which the owner of money deposits it with a company and at the same time receives a certificate of deposit for the same amount from a trust company, bought by the same fund and delivered to him and held by him as security for his deposit, is illegal and fraudulent.

2. **CERTIFICATE OF DEPOSIT: Fraudulent Transaction: Owner: Delivery.** A certificate for six thousand dollars was issued by an Indiana Trust Company, and endorsed by the payee to a Missouri Trust Company, and a Securities Company issued to him a certificate of deposit for the amount, under an agreement to pay him six per cent per month thereon, and he and the Securities Company joined in a letter, in which was inclosed the Indiana Trust Company certificate, to the Missouri Trust Company to issue a certificate of deposit to the Securities Company and send it by mail to the depositor to be held by him as security for the certificate issued to him by the Securities Company, and that was done, and this agreement being illegal and fraudulent, in a suit on the certificate issued by the Missouri Trust Company, the receiver of the Securities Company being interpleader, it is *held*, first, that the depositor cannot plead his own fraud and take the fund out of the purses of the Securities Company, nor can the receiver of that company compel him to put it into its coffers if that has not already been done, and, therefore, the question is, was the fund ever delivered to the Securities Company? *Second*, at no time was the certificate under the control of the Securities Company or in its possession, nor was the amount placed to its credit by the Missouri Trust Company and made subject to its check, and the transaction being tainted with fraud and therefore there being no valid or enforcible agreement to deliver, there was no delivery, and therefore the receiver is not entitled to it.

3. ———: ———: ———: **In Equity.** Where the whole transaction is tainted with fraud it will not be held that the thing sued on was, in equity, delivered, unless it was actually delivered.

4. ———: ———: ———: **Other Like Depositors.** It is immaterial whether the creditors of the company for which the receiver interpleads were of the same kind and character of depositors as the beneficial plaintiff who by fraudulent transaction secured a certificate of deposit from the company for a large sum of money and received as security therefor another certificate of deposit·issued to depositee by another company in lieu of the one he used to purchase the company's certificate of deposit, since the whole question is whether or not the other company's certificate, which is sued on, was ever delivered to the receiver's company.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

REVERSED (*with directions*).

*Bond, Marshall & Bond* and *W. G. Schofield* for appellant.

(1) The transfer by delivery of an unindorsed negotiable instrument carries full title or ownership to the transferee. Pattison v. Cave, 61 Mo. 441; Bishop v. Chase, 156 Mo. 170; Boeka v. Nuella, 28 Mo. 180; Davis v. Carson, 69 Mo. 609. (a) There is no difference in the transfer of an unindorsed note whether it is done by delivery only, or by written endorsement and delivery, so far as the vesting of title in the transferee is concerned. (b) Under the facts in this record C. W. Burket being the holder and owner of the unindorsed certificate of deposit issued by the Lincoln Trust Company, which delivered it to him December 28, 1902, was from that time vested with full title and ownership thereto, subject to those equities, if any, which the maker of the certificate (the Lincoln Trust Company) was entitled to plead as arising out of the consideration for which its certificate was given—as no such equities existed, he was entitled to receive the payment in full of said certificate. Crawford v. Johnson, 87 Mo. App. 478; Borgess Inv. Co. v. Vette, 142 Mo. 560; Jennings v. Todd, 118 Mo. 296; Hamilton v.

Marx, 63 Mo. 167; Mayes v. Robinson, 93 Mo. 114; Fitzgerald v. Barker, 96 Mo. 665, 137 Mo. 43. (2) An illegal or immoral contract when not fully performed will not be enforced or completed by any court, though its terms are expressed in the most solemn and binding agreement. Sprague v. Rooney, 104 Mo. 358, citing: Cappel v. Hull, 7 Wall. (U. S.) 558; Roselle v. Farmers' Bk., 141 Mo. 43; Ullman v. Fair Grounds, 167 Mo. 273; Sedalia Bd. of Trade v. Brady, 78 Mo. App. 585. (3) The business of the National Securities Company was illegal and immoral. Its certificate holders are not, therefore, legal creditors of said corporation. R. S. 1899, secs. 2221-22-23-24-25; Connor v. Black, 119 Mo. 26. (4) The statute invalidating pledges or mortgages of personal property to secure "indebtedness" on account of usurious interest, has no application whatever to the facts of this case. R. S. 1899, sec. 3710; Vette v. Geist, 155 Mo. 33.

*Johnson, Houts, Marlatt & Hawes* and *Ben. F. Clark* for respondent.

(1) The certificate of deposit of the Lincoln Trust Company was deposited with C. W. Burket as collateral security for a loan made by him to the National Securities Company, and this conveyed to him no right of property in either the certificate or the fund it represented, but only the right of possession and detainer. Barrett v. Goddard, 3 Mason 107; Allgear v. Walsh, 24 Mo. App. 134; Glass v. Gelvin, 80 Mo. 297; Erwin v. Arthur, 61 Mo. 386; Harding v. Maynard, 55 Mo. App. 364; Williams v. Evans Admr., 39 Mo. 201; Siegerman v. Kahman, 39 Mo. 206; Tiedeman on Bills and Notes, sec. 56; 1 Daniels on Negotiable Instruments, sec. 63-A; also sec. 68; Walsh & Harvey v. Dameron, 47 Mo. App. 221; Wood v. Flanery, 89 Mo. App. 641. (2) The pledge of the Lincoln Trust Company certificate with Burket as collateral security was

void and conveyed to Burket no right of any kind whatever in the fund represented by the certificate. (a)   The pledge of the Lincoln Trust Company certificate with Burket was void *ab initio* because of usury, and the receiver, being in privity to the National Securities Company, could take advantage of this fact. R. S. 1899, sec. 3710; Tolman v. Union Casualty Co., 90 Mo. App. 274; Adams v. Moody, 91 Mo. App. 41; Bell v. Mulholland, 90 Mo. App. 612; Voorhis v. Staed, 63 Mo. App. 370; Keim v. Vette, 167 Mo. 389; Fidelity Co. v. Baker, 54 Mo. App. 79.   (b)   The pledge of the Lincoln Trust Company certificate with Burket was void because the agreement between Burket and the National Securities Company, out of which the pledge grew, involved and comprehended an illegal agreement or conspiracy to jointly engage in a scheme to defraud and rob the public, and the contract having been executed, Burket can not now recover money loaned in furtherance of said scheme.   Brackett v. Griswold, 14 N. Y. St. Rep. 449; Percival v. Harres, 142 Pa. St. 369; Woolfolk v. Duncan, 80 Mo. App. 427; Roselle v. Farmers' Bank, 141 Mo. 43; Scudder v. Arwood, 55 Mo. App. 512; Garrett v. K. C. Coal M. Co., 113 Mo. 338; Wesby v. Bowers, 58 Mo. App. 419; Trimble v. Doty, 16 Ohio St. 133; Sumner v. Summers, 54 Mo. 340; Kitchen v. Greenbaum, 61 Mo. 110; Haggerty v. St. Louis Ice Mfg. & Sto. Co., 143 Mo. 238.   (3) Title to the fund in dispute passed to the receiver not later than the date of his appointment and qualification, March 9, 1903, and no subsequent transfer or endorsement of the certificate representing this fund could defeat this title.   Maynard v. Bond, 67 Mo. 315; Bank v. Dovetail Body & G. Co., 143 Ind. 534; In re Assignment of Hamilton, 26 Ore. 579; Young v. Rollins, 9 N. C. 125; Brant v. Allen, 76 Ia. 50; Payne v. Baxter, 2 Tenn. Ch. 517.

GRAVES, J.—The facts of this case can be summarized in a small compass. Plaintiff is a banking and trust company of the State of Indiana, located at Warsaw, Indiana. One Doctor C. W. Burket was one of the directors of said corporation and seems to have been inclined to advance his material wealth by rapid strides. In addition to being a director in plaintiff company, he was a practicing physician at Warsaw, Indiana. Prior to the dates hereinafter mentioned, M. E. Burket, wife of Dr. Burket, had received $6,000 as her interest in some land belonging to her father's estate. This money was deposited with the Indiana Loan & Trust Company, the plaintiff herein, but the certificate of deposit was in the name of C. W. Burket and M. E. Burket, and is, with the endorsements thereon, as follows:

"CERTIFICATE OF DEPOSIT.

"No. 467.                                     $6000.00

"Indiana Loan and Trust Company, Warsaw, Ind., Dec. 19th, 1902.

"C. W. and M. E. Burket has deposited with this company six thousand dollars payable to the order of theirself with interest at the rate of three per cent per annum from date on the surrender of this certificate properly endorsed.

"If said deposit remains with said company one year or more, the same shall draw interest from date at the rate of four per cent per annum. Said company reserves the right to redeem this certificate at any time by paying interest thereon at the rate of four per cent per annum.

"INDIANA LOAN AND TRUST COMPANY,
"JOHN D. WIDAMAN, President.
"GEO. W. BENNETT, Secretary."

Endorsed:

"Pay to Lincoln Trust Company,
"C. W. BURKET,
"M. E. BURKET.

"Pay to the order of Any Bank or Banker, Dec. 22, 1902.

"LINCOLN TRUST COMPANY,
"CHAS. HAMILTON, Sec'y."

Stamped on face:

"Paid; Indiana Loan and Trust Co., December 23, 1902."

The Lincoln Trust Company is a Missouri corporation, and the interpleader, Alfred A. Paxson, is the receiver of the National Securities Company, a corporation whose chief business seems to have been to fleece the unsuspecting public and especially those cherishing the ambition of becoming affluent by the short or quick method. The National Securities Company was advertising the short or quick method to riches. It claimed to have a "special process" by which six per cent per month dividends could be returned for funds left in its care. Its alleged field was speculating on the Board of Trade. Dr. Burket had received advertising literature from this concern and letters therefrom. On December 1, 1902, Dr. Burket wrote as follows:

"Warsaw, Indiana, December 1, 1902.
"National Securities Company,
"St. Louis, Mo.

"Dear Sir: I have your letter of the 25th; also affidavits; and will say that I will be in your city some time during this month on my way to Oklahoma City, and if everything is satisfactory, I will let you have $6,000 of money I have. Inclosed I return affidavits as per your request.
"Respectfully yours,
"C. W. BURKET."

The money referred to in this letter was his wife's money, deposited as stated above. December 20, 1902, Dr. Burket, with his wife, reached St. Louis, having the certificate of deposit. Upon reaching there he conferred with one Brooks of the National Securities Company and from him got some references as to the National Securities Company. One of these references stated that they knew nothing about the company, and the other, the Lincoln Trust Company, in effect, said that it would be all right to deposit with the company if he got security, although the business methods of said company were not impressed with honesty. This is about as far as the Doctor seems to have gone with his investigation of the references. The Lincoln Trust Company held large deposits of the National Securities Company. After talking with the representative of the Lincoln Trust Company, Dr. Burket describes the action of the parties thus:

"We went back to Mr. Brooks's office in the Equitable building and Mr. Brooks suggested to me that I deposit this money, and let them take a certificate of deposit,—let the National Securities take a certificate of deposit,—for the $6,000, and then we would inclose it in a letter and instruct Mr. Hamilton to forward that certificate of deposit to me at Oklahoma City, as collateral security for the $6,000 I was depositing with them and that is what I did. I mailed that certificate of deposit on the Indiana Loan and Trust Company to Mr. Hamilton with instructions to secure the certificate of deposit and forward it to me at Oklahoma City, which was done.

"Q. What else did you get? What did Mr. Brooks give you? A. He gave me a contract too. He gave me a certificate of deposit for $6,000.

"Q. What certificate of deposit was that—the National Securities Company? A. Yes, the National Securities Company gave me a certificate of deposit for $6,000."

On this date, Burket received a certificate of deposit with the National Securities Company for the $6,000.  On this question, he says:

"Q.  Now when you received the certificate of the National Securities Company for $6,000, what did you do with your certificate of deposit which you held in the Indiana Loan and Trust Company?

A.  I mailed that to Mr. Hamilton, the secretary of the Lincoln Trust Company.  I wrote him a letter at that time."

The letter thus referred to reads:

"December 20, 1902.

"Charles Hamilton, City.

"Dear Sir:  You will find inclosed certificate of deposit for six thousand dollars on Indiana Loan & Trust Company of Warsaw, Indiana.  Kindly place to the credit of the National Securities and issue a certificate for that amount to said company.  Upon issuance of certificate, mail the same to Dr. C. W. Burket, Oklahoma City, Oklahoma, said certificate to be held by him as collateral.

"C. H. BROOKS,
"Representing National Securities Co.
"C. W. BURKET."

As a part of this deal, Dr. Burket was to recommend the National Securities Company and at the time made and furnished the following affidavit for publication with other advertising matter of the National Securities Company, to-wit:

"To Whom It May Concern:

"On my way from Warsaw, Indiana, my home, to Oklahoma City, I stopped off at St. Louis to examine the affairs of the National Securities Company, with the idea in view of investing a sum with this concern in case the investigation proved satisfactory.

"I arrived in St. Louis, this morning, called upon the president of this concern, had an hour's talk with him regarding the methods pursued by this concern in their operations in the stock and grain market and found them highly satisfactory. I have had some experience in trading in the stock and grain markets for the past twenty or thirty years, and I must say that the plan or system of trading of this company is superior to any I have ever heard of, and must meet with success.

"I wished to know more about the concern, also about the financial standing and responsibility of this firm and asked the president to give me the names of several people in St. Louis to whom he could refer me in regard to their standing. I called upon several of the people and firms he referred me to, amongst whom were bankers and business men of the highest standing in St. Louis, and they all spoke in the highest terms of this corporation. I immediately returned to the office of the National Securities Company and deposited $6,000 with them on their six per cent per month plan. I wish further to state that I consider this firm and their methods for investment, the strongest and best I have ever heard of, and today I would not change my certificate issued by this company, for that of any bank in St. Louis. I endorse the methods of the company and recommend it to my friends.

"C. W. BURKET, M. D.

"Subscribed and sworn to before me this 20th day of December, 1902.

"(Seal)                           J. M. NELSON, Jr.

"Notary Public in and for the City of St. Louis, Mo.

"My commission expires March 17, 1905."

All these matters took place on December 20, 1902. On December 22, the following Monday morning and after Dr. Burket had gone to Oklahoma City,

Hamilton, of the Lincoln Trust Company, received the contract letter hereinbefore quoted. Hamilton then sent the certificate of deposit on the Indiana Loan and Trust Company to the State Bank of Warsaw, Ind., for collection. Upon the receipt of the certificate upon the Indiana Loan and Trust Company, Mr. Hamilton had this entry made upon the books of the Lincoln Trust Company, which gives some light upon his understanding of the deal:

> "Date: 12-19, 1902.
> Maker: Indiana Loan & Trust Company.
> Address: Warsaw, Indiana.
> Certificate of Deposit: 467, 3 per cent.
> Endorser: C. W. and M. E. Burket.
> Credit: See Charles Hamilton.
> Remit: C. W. and M. E. Burket.
> Date of Note: 12-19-02.
> Time: On demand. Protest note.
> Amount of Note: $6000.00.
> Interest from date at 3%."

Mr. Hamilton says that the words, "Credit: see Charles Hamilton," meant that when the proceeds of the $6,000 certificate were received he would give instructions as to how it would be entered and credited. On December 26th, following, the returns from this $6,000 certificate were received by the Lincoln Trust Company, and the Lincoln Trust Company following the directions given by the letter of December 20th, 1902, signed by both Burket and the National Securities Company, per C. H. Brooks, issued their certificate of deposit for $6,000, to the National Securities Company, and forwarded the same to Dr. Burket at Oklahoma City, with the following letter:

"LINCOLN TRUST COMPANY.

Capital $2,000,000.

"St. Louis, Mo., U. S. A., Dec. 26, 1902.

"C. W. Burket,

"No. 1. Masonic Temple,

"Oklahoma City, Oklahoma.

"Dear Sir: As per the instructions of the National Securities Company and carrying out arrangements made with you previously, we inclose herewith our demand certificate No. 658, dated December 26th, 1902, for $6,000 payable to the order of said company.

"Trusting this will be satisfactory, we are,

"Yours very truly,

"Charles Hamilton,

"Secretary."

The certificate described in this letter is the certificate involved in this suit, and with the later endorsements thereon, reads thus:

"No. 658.

St. Louis, Dec. 26, 1902.

"National Securities Co. has deposited with the Lincoln Trust Company (certificate of deposit) the sum of six thousand dollars. Not subject to check; Payable to same...................... or order upon demand and upon the return of this certificate.

"JULIUS C. GARRELL, Treas.

"Countersigned: CHAS. W. OWEN, Teller.

"This certificate bears two per cent. interest from date."

Endorsed:

"Pay to the order of C. W. Burket, National Securities Company. By C. H. Brooks, Pres.

"Pay to the Indiana Loan and Trust Co., or order, Warsaw, Ind., C. W. Burket, Indiana Loan and Trust Company, Geo. W. Bennett, Secy."

The endorsement, ''Pay to the order of C. W. Burket, National Securities Company, By C. H. Brooks, Pres.'' appears to have been made after the receiver had been appointed for said National Securities Company. Nor is it seriously contended that the plaintiff herein is an innocent purchaser for value. In other words it is practically conceded that the plaintiff must stand in the shoes of C. W. Burket, as such shoes may be constructed and made from the admitted facts. It appears that Dr. Burket had agreed, in consideration of his deal with Brooks, to advertise the reliability of the National Securities Company, and be it said that he faithfully carried out his part of this unlawful and unwarranted contract. He received the first monthly six per cent. dividend, but owing to Federal interference with the business methods of the company, or other reasons, he received no more. He therefore assigned his interest in the certificate in suit to the plaintiff, and this suit is the result. Defendant, Lincoln Trust Company, paid the money into court, and the real contest is between the plaintiff and the receiver of the National Securities Company, who interpleads for the fund in behalf of other creditors. Other facts may be required; and if so, they will be stated in the course of the opinion. For the present, this sufficiently states the facts.

I. In passing upon this case we must bear in mind the dates of the transactions hereinabove mentioned. We must further bear in mind that the contract or contracts between Dr. Burket and the National Securities Company, so far as they are executory, are illegal and non-enforcible. They were conceived in fraud and born in iniquity, if in fact, there has been a birth. Burket could not not enforce them on the one hand, nor could the National Securities Company upon the other. If it be granted that Burket agreed, in consideration of the certificate of $6,000 issued to him by the National

Securities Company, of date December 20, 1902, to have deposited with such company the proceeds of the certificate of deposit issued by the Indiana Loan and Trust Company, such contract could not be enforced by the National Securities Company, nor its receiver. It requires no citation of authority upon this question. The facts show that the alleged agreement would be illegal. We are then driven to the question as to whether or not Dr. Burket ever delivered to the National Securities Company the six thousand dollars involved in this suit. If so, Burket is in no position to plead his own fraud, and thereby take the fund out of the purses of the company, nor, on the other hand, can the receiver of said company compel him to put the money in its coffers, unless it has been already so done. This is the substantial question and to it we now proceed.

II.   The whole case turns largely upon the letter of December 20, 1902, signed by Brooks and Burket, and the subsequent steps taken thereafter. Up to the receipt of this letter with the certificate of the Indiana Loan and Trust company, really representing the money of Mrs. Burket, no enforcible contract had been made between Brooks and Burket. There might have been high morals existing between two persons, engaged in an unlawful and wrongful act, but not such as could be enforced in law. Six days after the receipt of this letter the Lincoln Trust Company got returns from the Indiana Loan and Trust Company. They thereupon issued a certificate payable to the National Securities Company, in the sum of $6,000, but never placed it to the credit of such company so that it was subject to its check, or otherwise under its control. At no time, whether authorized by the letter or not, did the Lincoln Trust Company place this $6,000, subject to the control of the National Securities Company. On the other hand, they placed the amount to their

credit, but not subject to check, and issued their certificate of deposit to such National Securities Company, but at no time delivered it, or placed it under the control of said company. The Lincoln Trust Company at once mailed the certificate to Dr. Burket, and so far as this record shows, the only parties who ever had possession of this evidence of indebtedness are (1) the Lincoln Trust Company, (2) Dr. Burket, and (3) the Indiana Loan and Trust Company, the plaintiff herein. If the National Securities Company ever acquired any interest, it was not by delivery, for that element is absent. There may be cases where the law would say that there had, in equity, been a delivery, but not so in cases where the whole transaction is tainted with fraud. In this case we cannot say that there had been a delivery, without first saying that there was a valid and enforcible agreement to deliver. This we cannot do. It has been argued that the creditors, for whom the receiver is acting, are of the same kind and character as is Dr. Burket. This may or may not be true. It is utterly immaterial to the issues of this case. We have here the sole question as to whether or not this fund ever reached the possession of the National Securities Company. If it did, the receiver, representing the creditors, is entitled to it, otherwise he is not. Viewing it from the facts before us there was never a delivery of the fund, or the evidence of the fund, to the National Securities Company, and so viewing it the receiver is not entitled to it. In all this we proceed upon the theory, and we think rightfully, that the present plaintiff must stand in the shoes of Dr. Burket. We do not even consider the equity of Mrs. Burket, who seems to be, whether willingly or unwillingly, the victim of misadventure. We conclude that the fund of $6,000, together with the evidence thereof, never passed by delivery or otherwise to the National Securities

Company, and for this reason the plaintiff herein, whether an innocent purchaser, for value, or not, is entitled to. the fund. It follows that the case should be reversed, with directions to enter a judgment in accordance with the views herein expressed and it is so ordered.

All concur.